UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CITY PARK FOR EVERYONE                        CIVIL ACTION
COALITION, ET AL.


VERSUS                                        NO: 15-918


FEDERAL EMERGENCY                             SECTION: R(4)
MANAGEMENT AGENCY, ET AL.

## ORDER AND REASONS

Defendant New Orleans City Park Improvement Association ("NOCPIA") moves the Court to dismiss plaintiffs' claims against it under the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA") for failure to state a claim and lack of jurisdiction. NOCPIA further moves for dismissal of plaintiffs' Louisiana state law claims on the grounds that the Court's supplemental jurisdiction does not extend that far. For the following reasons, the Court grants the motion to dismiss.


## I.    BACKGROUND

This case centers on NOCPIA's plan to build an 18-hole golf course within New Orleans' City Park and on the Federal Emergency Management Agency's ("FEMA") decision to partially fund the project. On March 26, 2015,

plaintiffs City Park for Everyone Coalition, Kevin McDunn, and Christopher Lane filed this action against FEMA, FEMA Administrator Craig Fugate, and NOCPIA, alleging that defendants collectively failed to conduct an adequate environmental review of the golf course project and gave insufficient opportunity for public comment in violation of the NEPA and the APA. Plaintiffs also bring several other claims against NOCPIA under Louisiana statutory and constitutional law.

### A.    The Parties

This case is brought by Kevin McDunn and Christopher Lane, both of whom are domiciled in Orleans Parish, Louisiana, along with the City Park for Everyone Coalition, a Louisiana non-profit corporation with its principal place of business in Orleans Parish, Louisiana.[1]

The federal defendants are FEMA, a federal agency headquartered in Washington D.C. and responsible for administering recovery grant programs, and FEMA's Administrator, W. Craig Fugate, who is named as defendant in his individual capacity.[2]   Defendant NOCPIA is a public body of the State of

---

[1] R. Doc. 1 at 2.

[2] *Id.* at 2-3

2

Louisiana, which is responsible for operations and management of New Orleans City Park.[3]

## B.      Factual Background

City Park consists of 1500 acres of multi-use parkland located within the City of New Orleans.[4]  Before Hurricane Katrina, 525 acres of City Park land were allocated among four 18-hole golf courses.[5]  While the South Course discontinued operations shortly before the storm made landfall,[6] the remaining three courses (North, East, West) sustained severe damage from the high winds, flooding, and storm surge brought by Hurricane Katrina.[7]  In 2009, the North Course was fully repaired and resumed operations, but the East and West Courses remained out of commission.[8]

As the entity responsible for City Park's management, NOCPIA developed a master plan that called for restoration and modification of the unrepaired courses.  This plan called for combining the West Course with

---

[3] *Id.* at 3.

[4] R. Doc. 1-8 at 7. (FEMA's "Draft Environmental Assessment).

[5] *Id.*

[6] *Id.* at 8; *see also* R. Doc. 1-6 at 9 ("New Orleans City Park Master Plan").

[7] R. Doc. 1-8 at 8. (FEMA's "Draft Environmental Assessment).

[8] *Id.*

3

portions of the East Course to create a new, single 18-hole golf course.[9]  Those portions of the East Course not allocated to the new course--approximately 96 acres, according to FEMA's Draft Environmental Assessment ("EA")--would be converted to green space, while 5.5 acres not previously used for golf would be added to the new course layout.[10]  To implement this plan, the State of Louisiana Facility Planning and Control (FP&C) applied for federal funding under FEMA's Public Assistance Program.[11]  After concluding that City Park's golf complex was eligible for restoration to pre-disaster condition, FEMA completed a Draft EA analyzing the potential environmental impacts of the proposed project.[12]  In May 2013, FEMA issued a draft Finding of No Substantial Impact ("FONSI"), which found that the project "would not result in significant adverse impacts to the quality of the natural and human environment" and that a complete EIS was not necessary.[13]

---

[9] *Id.* at 11.

[10] *Id.* at 11.

[11] *Id.*  Public Assistance is a program that provides funding to assist in repair, restoration, reconstruction, or replacement of public facilities damaged as a result of a declared disaster.  *See* 42 U.S.C. § 5172(a)(1)(A) ("The President may make contributions . . . to a State or local government for the repair, restoration, reconstruction, or replacement of a public facility damaged or destroyed by a major disaster and for associated expenses incurred by the government.").

[12] *See* R. Doc. 1-8 (FEMA's "Draft Environmental Assessment).

[13] *See* R. Doc. 1-9 (FEMA's "Draft FONSI").

4

Plaintiffs brought this lawsuit, seeking a declaratory judgment that defendants failed to comply with NEPA and an injunction compelling FEMA to withhold funds and requiring NOCPIA to stop construction pending completion of an adequate environmental review.[14]   Plaintiffs' complaint alleges numerous NEPA violations by both FEMA and NOCPIA.  Specifically, plaintiffs allege that FEMA gave too little consideration to the environmental impacts of developing acreage not previously devoted to golf and that it gave short shrift to the project's environmental justice implications.  Plaintiffs further allege the FEMA's EA included inaccurate statements and that the agency gave too little time for public comment on its draft FONSI.  As for NOCPIA, plaintiffs allege that the Association misled FEMA about aspects of its plan, including the nature and extent of public participation in its development.  Plaintiffs further allege that NOCPIA violated the Louisiana Public Records Law by responding inadequately to three requests for information concerning its golf course plans.  Finally, plaintiffs allege that NOCPIA failed to post complete minutes of its meetings in violation of Louisiana's Open Meetings Laws and that it did not consider the

---

[14] R. Doc. 1.

environmental implications of building a new golf course in City Park, as required by Louisiana's Public Trust Doctrine.

NOCPIA now moves to dismiss plaintiffs' federal and state law claims against it for failure to state a claim and lack of jurisdiction.[15]

## II.    LEGAL STANDARD

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)).  In ruling on a Rule 12(b)(1) motion to dismiss, the Court may rely on (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts.  *Den Norske Stats Ojeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.2001); *see also Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996).  The party asserting

---

[15] R. Doc. 11-1.

jurisdiction bears the burden of establishing that the district court possesses jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).

## III.   DISCUSSION

### A.   Plaintiff's Claims Under NEPA and the APA

NOCPIA moves for dismissal of plaintiffs' claims against it for violations of NEPA and the APA.  "NEPA establishes a 'national policy [to] encourage productive and enjoyable harmony between man and his environment.'" *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 756, 124 S. Ct. 2204, 2209, 159 L. Ed. 2d 60 (2004) (quoting 42 U.S.C. § 4231).  To advance this policy, "NEPA imposes procedural requirements on federal agencies, requiring agencies to analyze the environmental impact of their proposals and actions." *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 224 (5th Cir. 2006).  NEPA's core mandate is that "federal agencies must, except in certain qualifying situations, complete a detailed environmental impact statement ('EIS') for any major federal action significantly affecting the quality of the human environment." *O'Reilly v. U.S. Army Corps of Engineers*, 477 F.3d 225, 228 (5th Cir. 2007). "An agency is not required to prepare a full EIS if it determines--based on a shorter environmental assessment ('EA')--that the proposed action will not

7

have a significant impact on the environment." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 16, 129 S. Ct. 365, 372, 172 L. Ed. 2d 249 (2008).

Plaintiffs allege that NOCPIA committed numerous NEPA violations in connection with the City Park golf course project, including the production of an insufficient EA, the failure to produce an EIS, and the denial of an adequate time period for public comment. NEPA, however, does not provide a private right of action for violations of its provisions. *Noe v. Metro. Atlanta Rapid Transit Auth.*, 644 F.2d 434, 436-39 (5th Cir. 1981); *see also Highland Vill. Parents Grp. v. U.S. Fed. Highway Admin.*, 562 F. Supp. 2d 857, 860 (E.D. Tex. 2008) (citing *Gulf Restoration Network v. U.S. Dep't of Transp.*, 452 F.3d 362, 367 (5th Cir. 2006)) (noting that because "NEPA does not provide a private right of action," challenges to the NEPA process must be pursued through the APA). And while a plaintiff can pursue judicial review of NEPA-mandated decision-making under the APA, the APA does not authorize judicial review of actions by nonfederal defendants, such as NOCPIA. *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*, 980 F.2d 1043, 1055 (5th Cir. 1993) (holding that state housing authority was not an "agency" whose actions could be reviewed under the APA); *Vieux Carre Prop. Owners, Residents & Associates, Inc. v. Brown*, 875 F.2d 453, 456 (5th Cir. 1989) ("We fail to understand, however, how APA-dictated reviewability

8

of the Corps' decisions allegedly violating the RHA gives the district court jurisdiction to enjoin such nonfederal entities as the Audubon Park Commission."). Thus, the Court finds that plaintiffs' claims against NOCPIA have no basis in the law.

Plaintiffs argue that the Fifth Circuit case of *Named Individual Members of San Antonio Conservation Soc. v. Texas Highway Dep't*, 446 F.2d 1013, 1027 (5th Cir. 1971), allows them to assert NEPA and APA claims against NOCPIA despite its non-federal status. But that case is inapposite. There, the State of Texas tried to go forward with construction of a highway, even though the highway was a federal project, subject to NEPA, and the responsible federal agency had failed to conduct any environmental review whatsoever. *Id.* at 1015-16, 1022. The court held that Texas could be enjoined from proceeding until the federal agency met its NEPA obligations, noting that a contrary ruling would give allow Texas to "circumvent[] . . . an Act of Congress." *Id.* at 1027. The court did not hold--or even consider the argument--that NEPA requires non-federal entities to themselves perform an environmental review. Nor did it indicate that private plaintiffs may sue non-federal entities directly for failure to perform any act allegedly required by NEPA or the APA. Indeed, in the years since the *Named Individuals* case, the Fifth Circuit has repeatedly held that no such right of action exists. *Noe*, 644

9

F.2d at 436-39; *Resident Council*, 980 F.2d at 1055.  Thus, there is no jurisdictional basis for plaintiffs to assert NEPA or APA claims against NOCPIA, and those claims must be dismissed.

### B.    Plaintiffs' State Law Claims

Plaintiffs also raise claims against NOCPIA under the Louisiana Public Records Law, the Louisiana Open Meeting Law, and the Public Trust Doctrine--a doctrine based on Article IX, Section 1 of the Louisiana Constitution and implementing state legislation.[16]    Because plaintiffs do not argue any independent basis for federal jurisdiction, these claims may remain in only if the Court decides to exercise supplemental jurisdiction over them under 28 U.S.C. § 1367.  Section 1367(a) states that when a federal court has original jurisdiction, the court "shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  To be part of "the same case or controversy," each separate claim "must derive from a common nucleus of operative facts."   *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

---

[16] *See* La. Const. art. IX § 1; *Save Ourselves, Inc. v. Louisiana Envtl. Control Comm'n*, 452 So. 2d 1152, 1156 (La. 1984).

10

Here, plaintiffs' claims against FEMA arise under NEPA and the APA and therefore invoke this Court's federal question jurisdiction. *See* 28 U.S.C. § 1331. But while plaintiffs' lawsuit is properly in federal court, there is virtually no relationship between plaintiffs' federal law claims against FEMA and their claims against NOCPIA under Louisiana law. Plaintiffs allege that FEMA violated NEPA by erroneously issuing a FONSI for the City Park golf course project and failing to complete a full EIS. Plaintiffs further allege that FEMA provided an inadequate opportunity for public comment, in violation of the APA. When reviewing an agency's actions under the APA, a court will "uphold the agency's decision unless the decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Spiller v. White*, 352 F.3d 235, 240 (5th Cir. 2003). At issue is the agency's compliance with mandated procedures and the adequacy of its decision-making process. *See e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983). As such, the reviewing court looks primarily to "the record before the agency at the time of its decision." *Luminant Generation Co. v. U.S. E.P.A.*, 675 F.3d 917, 925 (5th Cir. 2012) (quoting *Geyen v. Marsh*, 775 F.2d 1303, 1309 (5th Cir. 1985)); *see also Camp v. Pitts*, 411 U.S. 138, 142, 93 S. Ct. 1241, 1244, 36 L. Ed. 2d 106 (1973) ("In applying [the arbitrary and capricious] standard, the focal point for

11

judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").  Here, the operative facts in plaintiffs' federal claims center on the record that FEMA assembled--a record containing, among other items, analyses of soil properties, animal habitats, drainage, and air quality at the proposed golf course site[17]--and on how FEMA evaluated that record in light of its statutory mandates.  Such information sheds no light on whether, as plaintiffs allege, NOCPIA failed to comply with public records requests and to post meeting minutes in violation of Louisiana law.

The same is true of plaintiffs' Public Trust Doctrine claim.  Assuming that NOCPIA could be deemed a public trustee and that plaintiffs have standing to sue for breach of trustee duties, the question would be whether NOCPIA acted reasonably in ensuring "environmental protection 'insofar as possible and consistent with the health, safety, and welfare of the people.'" *Save Ourselves*, 452 So. 2d at 1156-57 (quoting La. Const. art. IX § 1).  Thus, the Court would need to determine whether NOCPIA properly balanced the environmental costs of its golf course proposal with "economic, social, and other factors" mandated by Louisiana law.  *Id.* at 1157.  It is true that there are

---

[17] *See* R. Doc. 1-8. (FEMA's "Draft Environmental Assessment").

similarities between NEPA environmental review and the analysis that Louisiana law requires of public trustees. *See id.* at 1157-58. But supplemental jurisdiction requires common facts, not commonalities between state and federal law. The facts that matter to plaintiffs' NEPA and APA claims involve the record that FEMA assembled and how FEMA evaluated that record in light of its statutory mandate. Those facts bear little relation to plaintiffs' Public Trust Doctrine claim, which relates to decisions that NOCPIA, a non-federal entity, made at a different time, based on a different record, and guided by a different set of constitutional and statutory standards. Thus, the Court finds that plaintiffs' Public Trust Doctrine claim lacks a "common nucleus of operative facts" binding it to any claim that is properly in federal court. *United Mine Workers*, 383 U.S. at 725.

For these reasons, the Court will not exercise supplemental jurisdiction over any of plaintiffs' claims against NOCPIA under Louisiana law. Those claims are therefore dismissed under Rule 12(b)(1).

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS defendant NOCPIA's motion to dismiss plaintiffs' claims against it for lack of jurisdiction.

New Orleans, Louisiana, this _____2nd_____ day of November, 2015.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

14