UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CITY PARK FOR EVERYONE COALITION, ET AL. | CIVIL ACTION |
| VERSUS | NO. 15-918 |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, ET AL. | SECTION "R" (4) |

## ORDER AND REASONS

Before the Court is plaintiffs City Park for Everyone Coalition, Kevin McDunn, and Christopher Lane's motion for summary judgment[1] and defendant Federal Emergency Management Agency's (FEMA) cross-motion for summary judgment.[2] Because the Court finds that plaintiffs' claims are moot, the Court DISMISSES the complaint.

## I.   BACKGROUND

This case centers on the New Orleans City Park Improvement Association's (NOCPIA) plan to build an 18-hole golf course within New Orleans' City Park and on FEMA's decision to partially fund the project. City Park consists of 1500 acres of multi-use parkland located within the City of

---

[1]   R. Doc. 30.
[2]   R. Doc. 32.

New Orleans.[3]  Before Hurricane Katrina, 525 acres of City Park land were allocated among four 18–hole golf courses.[4]  While the South Course discontinued operations shortly before the storm made landfall,[5] the remaining three courses (North, East, and West) sustained severe damage from the high winds, flooding, and storm surge brought by Hurricane Katrina.[6]  In 2009, the North Course was fully repaired and resumed operations, but the East and West Courses remained out of commission.[7]

As the entity responsible for City Park's management, NOCPIA developed a master plan that called for restoration and modification of the unrepaired courses.  This plan called for combining the West Course with portions of the East Course to create a new, single 18–hole golf course.[8]  Those portions of the East Course not allocated to the new course—approximately 96 acres, according to FEMA's Draft Environmental Assessment ("EA")—would be converted to green space, while 5.5 acres not previously used for golf would be added to the new course layout.[9]  To

---

[3]     R. Doc. 1-8 at 7 (FEMA's "Draft Environmental Assessment").
[4]     *Id.*
[5]     *Id.* at 8; *see also* R. Doc. 1-6 at 9 ("New Orleans City Park Master Plan").
[6]     R. Doc. 1-8 at 8.
[7]     *Id.*
[8]     *Id.* at 11.
[9]     *Id.* at 11.

implement this plan, the State of Louisiana Facility Planning and Control (FP & C) applied for federal funding under FEMA's Public Assistance Program.[10] After concluding that City Park's golf complex was eligible for restoration to pre-disaster condition, FEMA completed a Draft EA analyzing the potential environmental impacts of the proposed project as required under the National Environmental Policy Act (NEPA).[11] In May 2013, FEMA issued a draft Finding of No Substantial Impact (FONSI), which found that the project "would not result in significant adverse impacts to the quality of the natural and human environment" and that a complete Environmental Impact Statement (EIS) was not necessary.[12] The draft FONSI noted that the draft EA was available both online and at the Orleans Parish Library, and concluded by stating that if no substantive comments on the draft EA were received, the draft EA would become final.[13]

---

[10] *Id.* Public Assistance is a program that provides funding to assist in repair, restoration, reconstruction, or replacement of public facilities damaged as a result of a declared disaster. *See* 42 U.S.C. § 5172(a)(1)(A) ("The President may make contributions . . . to a State or local government for the repair, restoration, reconstruction, or replacement of a public facility damaged or destroyed by a major disaster and for associated expenses incurred by the government.").

[11] *See* R. Doc. 1-8.

[12] *See* R. Doc. 1-9 (FEMA's "Draft FONSI"). Under NEPA, agencies are not required to prepare a full EIS if its EA determines that the proposed action will not have a significant impact on the environment. *See* 40 C.F.R. §§ 1508.9(a), 1508.13 (2016).

[13] R Doc. 1-9 at 5.

Plaintiffs brought this lawsuit, seeking a declaratory judgment that defendants failed to comply with NEPA and an injunction compelling FEMA to withhold funds and requiring NOCPIA to stop construction pending completion of an adequate environmental review.[14] Plaintiffs' complaint alleges numerous NEPA violations by both FEMA and NOCPIA. Specifically, plaintiffs allege that FEMA gave too little consideration to the environmental impacts of developing acreage not previously devoted to golf and that it gave short shrift to the project's environmental justice implications. Plaintiffs further allege the FEMA's EA included inaccurate statements and that the agency gave too little time for public comment on its draft FONSI. As for NOCPIA, plaintiffs alleged that the Association misled FEMA about aspects of its plan, including the nature and extent of public participation in its development. Plaintiffs further alleged that NOCPIA violated the Louisiana Public Records Law by responding inadequately to three requests for information concerning its golf course plans. Finally, plaintiffs alleged that NOCPIA failed to post complete minutes of its meetings in violation of Louisiana's Open Meetings Laws and that it did not consider the environmental implications of building a new golf course in City Park, as required by Louisiana's Public Trust Doctrine. At no point did plaintiffs seek

---

[14]   R. Doc. 1.

a preliminary injunction to halt construction while the litigation was pending.

On November 2, 2015, this Court granted NOCPIA's motion to dismiss plaintiffs' federal claims against NOCPIA and declined to exercise its supplemental jurisdiction over plaintiffs' state law claims.[15] Therefore, NOCPIA is no longer a party to this litigation. On August 8, 2016, plaintiffs filed their motion for summary judgment on their remaining claims against FEMA.[16] On September 6, 2016, FEMA filed its opposition to plaintiffs' motion and its cross motion for summary judgment.[17]

## II. LEGAL STANDARD

Plaintiffs argue that FEMA's FONSI is arbitrary and capricious and that FEMA violated NEPA and the APA. They seek a declaratory judgment stating that FEMA violated NEPA and the APA and an injunction prohibiting FEMA from providing any additional funds to NOCPIA and from taking any further action towards the golf course.[18] FEMA argues that the golf course's substantial completion renders plaintiffs' claims moot, and in the

---

[15] *See* R. Doc. 17.
[16] R. Doc. 30.
[17] R. Doc. 32.
[18] R. Doc. 1 at 20-21.

5

alternative, that FEMA did comply with NEPA and the APA. Because federal courts have no constitutional authority to resolve claims that have been rendered moot, *see, e.g.*, *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008), the Court is obligated to resolve the mootness issue as a threshold matter of jurisdiction. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 721 (5th Cir. 2007). When the court's jurisdiction to resolve the case is at issue, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

Mootness is the doctrine of standing in a time frame. *Envtl. Conservation*, 529 F.3d at 525. "The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Id.* (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). As a general rule, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot," *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006), and the case must be

6

dismissed, *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013). A case should not be declared moot "[a]s long as the parties maintain a 'concrete interest in the outcome' and effective relief is available to remedy the effect of the violation . . . ." *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) (citation omitted). But a case will become moot when "there are no longer adverse parties with sufficient legal interests to maintain the litigation," or "when the parties lack a legally cognizable interest in the outcome" of the litigation. *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004). As the Supreme Court has noted, "it is not enough that a dispute was very much alive when the suit was filed; . . . [t]he parties must continue to have a personal stake in the outcome of the lawsuit." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990) (citations and internal quotation marks omitted).

### A. Mootness — Application

FEMA argues that because it has already provided the funds obligated towards the golf course and because the golf course is substantially completed, plaintiffs' claims are moot.[19] In support, FEMA submits the sworn declaration of Robert Becker,[20] the CEO of NOCPIA, and the sworn

---

[19] R. Doc. 32-1 at 11-12.
[20] R. Doc. 32-4.

7

declaration of Albert Walters, FEMA's Public Assistance Operations Supervisor for Louisiana.[21] Becker attests that as of August 9, 2016, the golf course in question was 94 percent complete, and that over $12,000,000 in public funds have been expended in connection with the course.[22] Walters attests that FEMA approved $5,537,052.12 in funding for the golf course, and has already obligated $4,339,967 (which accounts for a $1,197,085.12 actual insurance reduction).[23] Walters also attests that FEMA transferred the funds to NOCPIA on August 23, 2013.[24]

Additionally, FEMA points to the cases of *Fla. Wildlife Fed'n v. Goldschmidt*, 611 F.2d 547 (5th Cir. 1980), *Richland Park Homeowners Ass'n v. Pierce*, 671 F.2d 935 (5th Cir. 1982), and *Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 217 F.3d 393 (5th Cir. 2000) to argue that substantial completion of a project can moot NEPA claims. *Richland* noted that "[b]ecause NEPA contemplates a future-looking agency inquiry, the courts have been reluctant, at least in the absence of bad faith violations, to grant relief after the challenged project has been substantially or wholly completed." *Richland*, 671 F.2d at 941. Both *Goldschmidt* and *Bayou*

---

[21] R. Doc. 32-3.
[22] R. Doc. 32-4 at 1-2.
[23] R. Doc. 32-3 at 2.
[24] *Id.*

8

*Liberty* found that substantial completeness of the challenged project mooted the plaintiffs' NEPA claims for declaratory and injunctive relief. *Goldschmidt*, 611 F.2d at 549; *Bayou Liberty*, 217 F.3d at 396.

Plaintiffs submit no evidence challenging the declarations of Walters or Becker, and concede that the golf course is (at the time these motions were filed) 94 percent complete.[25] Instead, plaintiffs argue that neither substantial completion nor 94 percent completion of the course renders their claims moot, as the project is still incomplete.[26] In support, plaintiffs rely on two Fifth Circuit cases, *Coliseum Square Ass'n Inc. v. Jackson*, 465 F.3d 215 (5th Cir. 2006), and *Vieux Carre Prop. Owners, Residents & Associates, Inc. v. Brown*, 948 F.2d 1436 (5th Cir. 1991), as well as FEMA's alleged inconsistencies as to the extent of completion of the course.

Plaintiffs' argument is unavailing. First, plaintiffs attempt to uncover an issue of material fact based on FEMA's admitting both that the course is "not complete" and that the course is "94% complete."[27] This argument is meritless. There is no inconsistency in stating that something that is 94 percent complete is not complete, but is substantially complete. Further, plaintiffs have neither submitted any evidence nor pointed to anything at all

---

[25] R. Doc. 37 at 4.
[26] *Id.* at 4-5.
[27] *Id.* at 5.

9

in the record to rebut FEMA's evidence that the project is 94 percent complete. Therefore, there is no issue of material fact as to the extent of the project's completion.

Additionally, neither *Coliseum Square* nor *Vieux Carre* supports plaintiffs' contention that substantial completion does not moot plaintiffs' claims, and plaintiffs do not point to any caselaw challenging the holdings in *Bayou Liberty* and *Goldschmidt*. *Coliseum Square*, as here, addressed a mootness challenge to an action seeking a declaratory judgment that the Department of Housing and Urban Development (HUD) failed to comply with NEPA in relation to a housing development project and an injunction compelling HUD to withhold federal funds from the project until HUD fully complied with NEPA. 465 F.3d at 225. Though the *Coliseum Square* court found that the action was not moot, *id.* at 227, the facts of that case showed that the challenged project was not substantially complete. The housing development project was a multi-faceted development that called for "the construction of new low-income housing, new market rate housing, a senior care facility, and a shopping center." *Id.* at 225. Though the court noted that the shopping center and the first phase of housing units had been completed, the court found that "significant projected construction and renovation remain unfinished." *Id.* at 227. Further, the construction of "200 mixed-

income rental units, 64 affordable rental housing units for the elderly, a 250–unit market rate rental retirement community, and 200 market rate condominium units; additional small-scale commercial ventures, . . .; and construction or rehabilitation of affordable rental housing (90 units) and affordable individually owned houses (50 units)" had not even begun. *Id.* Therefore, the facts of *Coliseum Square* are not remotely similar to a situation in which a golf course is 94 percent complete, and *Coliseum Square* is no barrier to the conclusion that the golf course's substantial completion moots plaintiffs' claims.

*Vieux Carre* does not help plaintiffs either. In *Vieux Carre*, an historic building preservation group asserted that the U.S. Army Corps of Engineers approved construction of a park and aquarium without following the procedures set forth in the National Historic Preservation Act (NHPA). 948 F.2d at 1438. After an appeal and remand to the district court, the district court dismissed the suit stating that the claims were now moot because construction of the aquarium and park had been substantially completed. *Id.* at 1439-40. The Fifth Circuit reversed the district court's finding of mootness, stating that "the law is clear that a suit is moot only when it can be shown that a court cannot even 'theoretically grant' relief. Mere '[d]ifficulties

11

in formulating a remedy in an otherwise living case do not evidence the absence of a case or controversy.'" *Id.* at 1446 (citations omitted).

But the Fifth Circuit has already distinguished *Vieux Carre* from a NEPA case nearly identical to this one in *Bayou Liberty*. 217 F.3d at 397. *Bayou Liberty* addressed a NEPA challenge to a permit issued under the Clean Water Act for a construction project that had been substantially completed. *Id.* at 397. There, as here, the plaintiffs sought declaratory and injunctive relief, and pointed to *Vieux Carre* to argue that its NEPA claims were not moot. In distinguishing *Vieux Carre*, the *Bayou Liberty* court relied on the fact that in *Vieux Carre* it was impossible to know what effect a NHPA review would have because the Corps failed to conduct the review, and therefore the review process could have theoretically resulted in measures to mitigate the adverse effects of the construction project. *Id.* at 397. Unlike in *Vieux Carre*, in *Bayou Liberty* the Corps issued an EA and FONSI in compliance with NEPA. *Id.* at 396. Because there had been a review under NEPA, any "possible effects of a NEPA review [were] not theoretical." *Id.* at 397 (citations omitted).

The Fifth Circuit went on to state that it "interpreted *Vieux Carre's* instruction to dismiss claims as moot only when a court cannot even theoretically grant relief to mean 'theoretical not in the sense that we have

imagined possibilities beyond those requested in the complaint, but rather in the sense that we [have] given the plaintiff the benefit of the doubt as to whether certain requested relief would in fact ease or correct the alleged wrong.'" *Id.* at 397 (citing *Harris v. City of Houston*, 151 F.3d 186, 190 (5th Cir. 1998)). But because the project had been substantially completed, even if the *Bayou Liberty* court granted the requested declaratory and injunctive relief, it would be meaningless. *Id.* ("[n]ow that the construction on the retail complex has been substantially completed, even giving the [plaintiff] the complete benefit of the doubt by assuming that we would suspend the permit, there would be no meaningful relief").

As in *Bayou Liberty* (and unlike *Vieux Carre*), here there has been a review under NEPA, and FEMA's draft EA and FONSI detail FEMA's conclusion (and the reasoning behind it) that the golf course would not result in significant adverse impacts to the quality of the environment.[28] Therefore, the results of the review process are known and not theoretical. Further, plaintiffs' requested relief will not have any meaningful effect. The FEMA funding has already been transferred, and the golf course is substantially completed. NOCPIA is no longer a party to this litigation, and the Court generally cannot enjoin non-parties. *See* Fed. R. Civ. P. 65(d)(2);

---

[28]   R. Doc. 1-9 at 4.

13

*Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985).  While the Court could enjoin FEMA from providing any additional funding to NOCPIA or from taking action related to the golf course, it cannot stop NOCPIA from finishing the course with funding from other sources, a fact that plaintiffs readily acknowledge.[29]  Additionally, the Court cannot "undo what has already been done."  *Goldschmidt*, 611 F.2d at 549.  Therefore, any declaratory relief regarding FEMA's alleged noncompliance with NEPA or injunctive relief against FEMA would not have any meaningful effect as to the alleged environmental harms.  *Bayou Liberty*, 217 F.3d at 396-97.

Because the substantial completion of the golf course has foreclosed any meaningful relief that would flow from granting plaintiffs' requested relief, this action has become moot.  Therefore, the Court will not reach the substance of plaintiffs' NEPA and APA challenges.

---

[29]   Plaintiffs' response in opposition to FEMA's motion for summary judgment states that "[s]hould the CPIA wish to continue building the golf course, it should be required to use only non-federal funds."  R. Doc. 37 at 5.

## III. CONCLUSION

For the foregoing reasons, the Court DISMISSES plaintiffs' claims AS MOOT, and the Court DENIES AS MOOT plaintiffs' and defendant's motions for summary judgment.

New Orleans, Louisiana, this __7th__ day of December, 2016.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE